UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY A. HENDERSON,

        Plaintiff,                             CIVIL ACTION NO. 13-10422

        v.                                     DISTRICT JUDGE DENISE PAGE HOOD

                                           MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 10, 14)**

Plaintiff Jeffrey A. Henderson challenges the Commissioner of Social Security's ("the Commissioner") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 10, 14). Judge Denise Page Hood referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I. RECOMMENDATION**

Because the Administrative Law Judge ("ALJ") appropriately afforded no weight to the consultative examiner's findings and adequately explained why Plaintiff's testimony regarding his fatigue was not credible, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II. DISCUSSION**

    *A.    Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III.    REPORT

#### A.    *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on September 3, 2010 and supplemental security income on August 15, 2010. On both applications, Plaintiff alleged he became disabled on August 15, 2010 (Tr. 12). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Michael F. Wilenkin, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 12-20). Plaintiff requested an Appeals Council review (Tr. 7). On December 19, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

#### B.    *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his alleged onset date in August of 2010 (Tr. 14).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: status post Type B aortic dissection with surgical repair;[1] hypertension; polycystic renal disease;[2] and,

---

[1] "An aortic dissection is a serious condition in which a tear develops in the inner layer of the aorta, the large blood vessel branching off the heart. Blood surges through this tear into the

-4-

coronary artery disease with right coronary artery ischemia,[3] and left ventricular dilation[4] and reduced ejection fraction (Tr. 14).[5]

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 15).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work (Tr. 16).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a dump truck driver or construction worker (Tr. 19).

---

middle layer of the aorta, causing the inner and middle layers to separate (dissect). If the blood-filled channel ruptures through the outside aortic wall, aortic dissection is often fatal." *See* http://www.mayoclinic.com/health/aortic-dissection/DS00605 (last visited November 5, 2013).

[2]"Polycystic kidney disease (PKD) is a genetic disorder characterized by the growth of numerous cysts in the kidneys." *See* http://kidney.niddk.nih.gov/kudiseases/pubs/polycystic/ (last visited November 5, 2013).

[3]"Coronary artery disease (CAD) . . . is a narrowing of the coronary arteries, the vessels that supply blood to the heart muscle, generally due to the buildup of plaques in the arterial walls, a process known as atherosclerosis. Plaques are composed of cholesterol-rich fatty deposits, collagen, other proteins, and excess smooth muscle cells. Atherosclerosis, which usually progresses very gradually over a lifetime, thickens and narrows the arterial walls, impeding the flow of blood and starving the heart of the oxygen and vital nutrients it needs (also called "ischemia"). This can cause muscle cramp-like chest pain called angina." *See* http://www.hopkinsmedicine.org/heart_vascular_institute/conditions_treatments/conditions/coronary_artery.html (last visited November 5, 2013).

[4]"Dilated cardiomyopathy is a disease of the heart muscle, primarily affecting [the] heart's main pumping chamber (left ventricle). The left ventricle becomes enlarged (dilated) and can't pump blood to [the] body with as much force as a healthy heart can." *See* http://www.mayoclinic.com/health/dilated-cardiomyopathy/DS01029 (last visited November 5, 2013).

[5]"Reduced ejection fraction [is] also referred to as systolic heart failure. The heart muscle does not contract effectively and less oxygen-rich blood is pumped out to the body." *See* http://www.heart.org/HEARTORG/Conditions/HeartFailure/SymptomsDiagnosisofHeartFailure/Ejection-Fraction-Heart-Failure-Measurement_UCM_306339_Article.jsp (last visited November 5, 2013).

At step five, the ALJ found Plaintiff was not disabled, because there are a significant number of jobs available in the national economy that Plaintiff could perform, such as surveillance monitor, information clerk, cashier, telemarketer, sorter, inspector, or small parts assembler (Tr. 19-20).

### C.     *Administrative Record*

#### 1.     **Plaintiff's Hearing Testimony and Statements**[6]

Plaintiff suffers from an aortic aneurism, constant fatigue, occasional chest pain, headaches, and lightheadedness (Tr. 37-39, 41-42).  He sleeps for six hours in the daytime (in addition to sleeping at night) (Tr. 48).

Plaintiff cannot lift more than 10 pounds; repetitively climb stairs, use his arms, stoop, squat, kneel, or crouch.  He also cannot engage in any physical activities that would cause his blood pressure to rise (Tr. 41).  Plaintiff takes care of his personal needs, occasionally does laundry, goes grocery shopping, and washes dishes (although, it makes him tired).  He can walk half a mile before he gets tired; stand for 20-30 minutes; sit for an unlimited amount of time; and, use his hands to hold, grip, and grasp (Tr. 42, 45-46, 48).

#### 2.     **Vocational Expert**

The vocational expert ("VE") testified that if Plaintiff's testimony regarding his limitations was entirely credible, he would be precluded from work due to fatigue (Tr. 49-50). However, if Plaintiff did not have a medically discernible need to sleep or lie down during the work day, he could perform work as a surveillance monitor, information clerk, Cashier II, telemarketer, sorter, packager, inspector, or small products assembler (Tr. 50).

---

[6]Plaintiff's testimony before the ALJ reflects his subjective view of his medical condition, abilities and limitations.  It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

### D.    *Plaintiff's Claims of Error*[7]

Plaintiff argues that the ALJ made two errors: (1) he failed to afford any weight to Dr. Shah's findings; and, (2) he did not find Plaintiff's testimony regarding fatigue credible.

####    1.    Atul C. Shah, M.D.'s Opinion

On September 8, 2011, Atul C. Shah, M.D., prepared an internal medicine report on Plaintiff for the SSA.  Dr. Shah noted that Plaintiff's cardiologist advised him not to work, and that he had "moderate functional impairment for occupational activity" (Tr. 281, 283). Specifically, Dr. Shah found the following:

1.  Plaintiff could sit, stand, bend, stoop, carry, push, pull, button his clothes, tie his shoes, dress and undress, dial a telephone, open a door, make a fist, pick up a coin or a pencil, write, squat and arise from squatting, get on and off the examining table, climb stairs, perform rapidly alternating movements, touch one finger to another, touch his nose with his finger, and touch his heel to his shin, but these activities caused tiredness and fatigue (Tr. 287);

2.  Plaintiff could occasionally lift up to 10 pounds; reach; handle, finger, and feel objects; push; pull; shop; travel without a companion for assistance; ambulate without an assistive device; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and, sort, handle, and use paper and files (Tr. 289, 291, 294);

3.  Plaintiff could never balance; carry objects; operate foot controls (although, he drove himself to the clinic); or, climb stairs, ramps, ladders, or scaffolds (Tr. 281, 289, 291-292);

4.  Plaintiff could withstand a total of three hours of activity during an eight-hour workday: he could sit for one hour, stand for one hour, and walk for one hour (Tr. 290);

---

[7]Plaintiff attempts to argue that the fact that he can drive, grocery shop, wash dishes, and sweep the floor does not mean he can work for eight hours a day, five days a week.  *See e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("minimal daily functions are not comparable to typical work activities").  But, the ALJ did not base his disability determination on Plaintiff's ability to perform daily functions.

-7-

>   5. Plaintiff should never be exposed to unprotected heights, moving mechanical parts, motor vehicles, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme heat or cold, or vibrations (Tr. 293); and,
>
>   6. Plaintiff needed a work environment that was as quiet as a library (Tr. 293).

The ALJ afforded "no weight" to Dr. Shah's findings: he determined they were inconsistent with Plaintiff's stated abilities (for example, Plaintiff testified at the hearing that he had no problem sitting, which was in stark contrast to Dr. Shah's finding that Plaintiff could only sit for one hour total out of an eight-hour workday) (Tr. 18). Plaintiff argues that the ALJ should have adopted Dr. Shah's findings because they were consistent with the evidence.

This Magistrate Judge focuses on Dr. Shah's sitting, standing, carrying, and walking limitations because those are the capabilities required for sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *see also* SSR 96-9p ("[t]he full range of sedentary work requires that an individual be able to stand and walk for a total of approximately [two] hours during an [eight]-hour workday").

Plaintiff's hearing testimony supports the ALJ's determination that he could perform sedentary work: Plaintiff testified both that he could lift 10 pounds (Tr. 41)[8] and – contrary to

---

[8] Dr. Shah also found that Plaintiff could lift 10 pounds (Tr. 289), which was the *least* amount of weight that any doctor found Plaintiff could lift. For example, on September 23, 2010, Plaintiff's treating cardiologist, Himanshu J. Patel, M.D., found Plaintiff could lift 15-30 pounds and indicated that he might increase the restriction to 30-50 pounds (Tr. 175). On March 1, 2011, consultative physician Michael Parish, M.D., found Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds (Tr. 57-58).

-8-

Dr. Shah's finding that Plaintiff could only sit for one hour (Tr. 290) – that he had no trouble sitting (Tr. 46-47). Plaintiff also did not testify that he was only able to withstand three hours of activity during an eight-hour workday (other than his need to sleep during the day, which the ALJ appropriately found was not credible, as discussed below).

Moreover, sedentary work does not require a significant amount of walking and standing. And, Dr. Shah's finding that Plaintiff could stand and walk for one hour (Tr. 290) does not necessarily undermine the ALJ's determination that Plaintiff could perform sedentary work. *See* SSR 96-9p ("[i]f an individual can stand and walk for a total of slightly less than [two] hours per [eight]-hour workday, this, by itself, would not cause the occupational base to be significantly eroded").[9]

Finally, internal inconsistency is a proper basis upon which to discredit a medical opinion, *Jones v. Colvin*, No. 3:12cv00392, 2013 WL 5786030, at *8 (S.D. Ohio Oct. 28, 2013), and Dr. Shah's findings regarding Plaintiff's ability to carry objects were inconsistent.[10] He initially found that Plaintiff could carry objects (Tr. 287), but on the same form, found that he could not carry objects (Tr. 287). Still, Dr. Shah did find that Plaintiff could handle papers and files (Tr. 294), and Plaintiff testified that he could hold, grip, and grasp objects (Tr. 48).

This Magistrate Judge finds that substantial evidence supports the ALJ's decision to afford Dr. Shah's findings "no weight" and it should not be disturbed on appeal.

### 2. Credibility Determination

---

[9]This Magistrate Judge finds that Plaintiff's testimony also supports a finding that he could perform sedentary work; Plaintiff testified that he could stand for 20-30 minutes at a time and walk half a mile (Tr. 46).

[10]Dr. Shah also initially found that Plaintiff could stoop and climb stairs (subject to his tiredness and fatigue) (Tr. 287), but on the same form, found that Plaintiff could never stoop or climb stairs (Tr. 292). Plaintiff testified that he could climb stairs (Tr. 47).

Plaintiff next argues that the ALJ should have credited his testimony regarding his fatigue. Specifically, Plaintiff says that the ALJ erred by failing to mention that his fatigue was medically supported by: (1) Dr. Shah's note that Plaintiff's ability to perform certain functional activities was limited by his tiredness and fatigue (Tr. 287); and, (2) T. L. Schreiber, M.D.'s findings that Plaintiff's left ventricular ejection fraction was 43%; one ECG was abnormal with probable left ventricular hypertrophy; a second ECG was abnormal and showed sinus bradycardia, prolonged QT interval, possible anterior infarct, and lateral T-wave changes that might have been due to myocardial ischemia; a third ECG was abnormal and showed marked sinus bradycardia and T-wave abnormalities; his EKG revealed sinus bradycardia with T-wave changes; his myocardial perfusion scan was markedly abnormal with moderate ischemia in the inferior segment; his left ventricle was moderately dilated; and, there was suggestion of ongoing ischemia in the right coronary artery (Tr. 299-303).

"A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition." *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)). "'[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.'" *Id.* (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)). On review, an ALJ's credibility determination will be upheld if it "'contain[s] specific reasons for the finding on credibility, supported by the evidence in the case record, and [is] sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

-10-

Here, the ALJ accepted that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 18), but discounted the severity of Plaintiff's fatigue:

> [t]he only testimony inconsistent with the above-assessed residual functional capacity is [Plaintiff's] testimony regarding *fatigue*. Accordingly, the main issue in this case is whether the medical record supports a finding that [Plaintiff's] alleged fatigue (secondary to his impairments and prescription medication) precludes performance of substantial gainful activity on a sustained basis.
>
> \*   \*   \*
>
> Notes at Exhibit 4F indicate [Plaintiff] presented for a consultative examination on September 8, 2011, pursuant to his application for benefits. Nowhere in the report does it indicate that [Plaintiff] complained of fatigue, which is curious for someone alleging six to seven hours of daytime recumbency pursuant to such. Moreover, a close review of the above-discussed follow-up notes also reveals no complaints of fatigue. Again, this is curious from one alleging such an extreme amount [of] fatigue.
>
> [Plaintiff] testified to limitations consistent with a residual capacity to perform sedentary work, save for his allegations of extreme fatigue. However, nowhere in the record is there evidence that [Plaintiff] has ever complained of fatigue, let alone fatigue raising to a work-preclusive level. . . . The undersigned finds that [Plaintiff] presented as less than entirely credible (mostly in his testimony regarding fatigue); nevertheless, the undersigned accords some weight to his testimony, especially in regards to his testimony being consistent with an ability to meet the physical demands of exertionally sedentary work. The undersigned accords no weight to [Plaintiff's] allegation of work-preclusive fatigue for reasons discussed above.

(Tr. 17-18) (emphasis in original). Plaintiff is correct that the ALJ did not mention Dr. Shah's note regarding Plaintiff's tiredness and fatigue, but any such error was harmless. Dr. Shah found Plaintiff could perform the functional activities, but simply noted in the comments section of the

-11-

form that Plaintiff suffered "tiredness and fatigue" from the identified activities.[11] Dr. Shah did not specify the extent of Plaintiff's "tiredness and fatigue," and this Magistrate Judge finds that remanding the case for consideration of such a conclusory remark would be a useless formality. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("[w]hen 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game'").

Plaintiff is also correct that the ALJ did not mention Dr. Schreiber's test results, but again, the error was harmless. Dr. Schreiber did not conclude that Plaintiff's abnormal medical tests would cause fatigue.

Plaintiff does not dispute the ALJ's finding that he never complained about fatigue to *any* doctor, and Dr. Shah's notation and Dr. Schreiber's medical test results do not support Plaintiff's allegation of work-preclusive fatigue. Additionally, "an ALJ is not required to discuss all the evidence submitted, and . . . failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

Notably, Plaintiff reported that his medication caused drowsiness and he "often tire[d] eas[ily]," but his Function Report does not support Plaintiff's hearing testimony that he has to sleep for six hours in the daytime. Plaintiff's daily routine consists of waking up at 4:00 a.m., eating breakfast, watching the news, taking his medications, reading the paper, taking a nap,

---

[11]The activities included siting, standing, bending, stooping, carrying, pushing, pulling, buttoning his clothes, tying his shoes, dressing and undressing, dialing a telephone, opening a door, making a fist, picking up a coin or a pencil, writing, squatting and arising from squatting, getting on and off the examining table, climbing stairs, performing rapidly alternating movements, touching one finger to another, touching his nose with his finger, and touching his heel to his shin (Tr. 287).

eating lunch, eating dinner, walking around the block, and going to bed around 9:00 p.m. (Tr. 131-132, 137, 150). There is no mention of sleeping for six hours in the daytime.

This Magistrate Judge finds the ALJ's credibility determination is supported by substantial evidence and should not be disturbed on appeal. *See Miller v. Astrue*, No. 1:12-cv-16, 2012 WL 6644390, at *7 (S.D. Ohio Dec. 20, 2012) (substantial evidence supported the ALJ's decision to discount plaintiff's subjective complaints of disabling fatigue when "[d]espite a handful of references to 'nonspecific fatigue,' no physician documented the type of extreme and disabling fatigue to which [p]laintiff testified").[12]

## IV.     CONCLUSION

Because the ALJ appropriately afforded no weight to the consultative examiner's findings and adequately explained why Plaintiff's testimony regarding his fatigue was not credible, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised

---

[12]This case is distinguishable from *Higgins v. Barnhart*, 294 F.Supp.2d 1206, 1213 (D. Kan. 2003), in which the court remanded, in part, because "[t]he ALJ . . . failed to explain why [p]laintiff's complaints [were] not credible, in light of his contemporaneous complaints [of fatigue and shortness of breath] to his treating physicians referenced in the medical records[.]." Here, Plaintiff never complained of fatigue to any physician.

that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  November 14, 2013

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 14, 2013, by electronic and/or ordinary mail.

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*